UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

              v.                                               5:07-MJ-194
                                                              (FJS/GJD)

LUCIEN MALEY,

                            **Defendant.**

_____

**APPEARANCES**                                      **OF COUNSEL**

**OFFICE OF THE UNITED**          **JOHN M. KATKO, AUSA**
**STATES ATTORNEY**
James Hanley Federal Building
100 South Clinton Street
Syracuse, New York 13261
Attorneys for the United States

**OFFICE OF MICHAEL J. VAVONESE**    **MICHAEL J. VAVONESE, ESQ.**
407 South Warren Street, Suite 300
Syracuse, New York 13202
Attorneys for Defendant Maley

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

       Currently before the Court is Defendant Maley's appeal from Magistrate Judge DiBianco's July 3, 2007 Order of Detention. The Court heard oral argument in support of, and in opposition to, this appeal on August 21, 2007, and reserved decision at that time. The following is the Court's resolution of Defendant's appeal.

## II. BACKGROUND

On June 7, 2007, law enforcement officers arrested Defendant Maley, together with fifteen others, all of whom were charged with conspiracy to distribute and possess with intent to distribute controlled substances (prescription drugs), and acquiring or obtaining possession of controlled substances by misrepresentation, fraud, forgery, deception and subterfuge, in violation of Title 21, United States Code, §§ 846, 841, and 843(a)(3). On that same day, Defendant was arraigned before Magistrate Judge DiBianco and was detained pending a detention hearing, which was held the next day.

On June 11, 2007, Magistrate Judge DiBianco issued an Order of Detention Pending Trial. *See* Order dated June 11, 2007. In that Order, Magistrate Judge DiBianco found that

> (1) There is probable cause to believe that the defendant has committed an offense . . . for which a maximum term of imprisonment of ten years or more is prescribed in 21 U.S.C. § 801 et seq. . . . [and] (2) The defendant has not rebutted the presumption established by finding #1 that no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of the community.

*See id.* at 1.

Magistrate Judge DiBianco also found that, although he recognized that

> the defendant's criminal record is not lengthy, and that one of his two convictions was as long ago as 1974, . . . his conviction in this court for conspiracy to distribute marijuana in 1996[1] does not support a finding of release in this case. Additionally, since the officers recovered a distribution-quantity of marijuana in the defendant's home at the time of his arrest, it appears that the defendant could be involved in drug trafficking as well as in the conduct described in this case. In the Pretrial Services Report,

---

[1] Defendant Maley's 1996 conviction was in the United States District Court for the Middle District of Pennsylvania, not this Court.

> defendant stated that he has smoked marijuana since his teenage years and used the drug to self-medicate and help him with the pain associated with his physical conditions. Although defendant's wife is employed, the defendant is not, and there is a danger that the defendant will return to selling drugs. Drug trafficking in itself has been held to constitute a danger to the community. . . .

*See id.* at 4 (citation omitted).

Having considered all of the statutory factors, Magistrate Judge DiBianco concluded that

> no condition or combination of conditions can be imposed on the defendant which will assure defendant's return and the safety of the community. Although the defendant may have rebutted the presumption of flight, he has not sufficiently rebutted the presumption of danger to the community, and . . . the Government has shown this danger by clear and convincing evidence.

*See id.*

Defendant sought reconsideration of Magistrate Judge DiBianco's Detention Order. *See* Dkt. Nos. 25, 46, 66.[2] After considering Defendant's arguments, Magistrate Judge DiBianco concluded that the evidence that Defendant presented was "not sufficient for this court to change its prior decision." *See* Order dated July 3, 2007, at 4. It is from this decision that Defendant Maley now appeals.

### III. DISCUSSION

Section 3145(b) of Title 18 of the United States Code provides, in pertinent part, that, "[i]f a person is ordered detained by a magistrate, . . . the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order. The

---

[2] At Defendant Maley's first detention hearing, Carl Guy represented him. Thereafter, Defendant Maley retained new counsel, Michael Vavonese, who filed the motion for reconsideration on Defendant's behalf.

motion will be determined promptly." 18 U.S.C. § 3145(b).  Furthermore, "in ruling on [such] a motion . . . [a district court] should not simply defer to the judgment of the magistrate, but reach its own independent conclusion." *United States v. Leon*, 766 F.2d 77, 80 (2d Cir. 1985) (citations omitted).  In other words, a district court "should . . . accord[] [such a motion] substantially *de novo* review." *United States v. Rentas*, 889 F. Supp. 579, 579 (N.D.N.Y. 1995) (citation omitted).

In conducting its *de novo* review, the court must consider the factors set forth in 18 U.S.C. § 3142 to "determin[e] whether there are conditions of release that will reasonably assure . . . the safety of any other person and the community . . . ." 18 U.S.C. § 3142(g).  Specifically, the court must consider

>   (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, . . . or involves a . . . controlled substance, [or] firearm, . . .;
>
>   (2) the weight of the evidence against the person;
>
>   (3) the history and characteristics of the person, including –
>       (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and . . .
>
>                  * * * * * * * * *
>
>   (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. . . .

*See id*.

The Court will address each of these factors in turn.

### *1. Nature and circumstances of the offenses charged*

With regard to the first factor – the nature and circumstances of the offenses with which Defendant is charged – there can be no doubt that conspiracy to distribute and possess with intent to distribute controlled substances and acquiring possession of such substances by misrepresentation, fraud, forgery, deception and subterfuge are serious crimes, as evidenced by the heavy penalty that Defendant may face if he is convicted of these crimes. However, although the crimes with which Defendant is charged involve controlled substances, they do not involve firearms and there is nothing in the record to indicate that Defendant engaged in any violence during the alleged commission of these crimes. Therefore, although the Court recognizes the serious nature of these offenses, the Court finds that this factor, standing alone, does not indicate that there are no conditions of release that would reasonably assure the safety of the community.

### *2. The weight of the evidence against Defendant*

The record reveals that the Government has substantial evidence upon which to base its charges against Defendant. As Magistrate Judge DiBianco noted in his June 11, 2007 Order of Detention, Special Agent Anthony Hart of the United States Drug Enforcement Administration stated, in his affidavit, that "between February 2005 and March, 2007, [D]efendant Maley obtained 13 prescriptions written by Dr. Black, totaling 1,290 tablets of Alprazelam and 360 tablets of Hydrocodone . . . [and] on May 4, 2007, BNE investigators were at the Kinney Drug Store in Syracuse, New York, when [D]efendant Maley presented a prescription for OxyContin, written by Dr. Black." *See* Order dated June 11, 2007, at 2. Special Agent Hart also noted that

> BNE investigators observed [D]efendant Maley drive to Liverpool Country Club, where he met with defendant Black, and where defendant Black was observed leaving in [D]efendant Maley's car. Defendant Black drove to another location to meet defendant Alexander. The investigators learned that, shortly thereafter, defendant Alexander dropped off a prescription written by Dr. Black for OxyContin and Dextroamphetamine at the same pharmacy.

*See id.*

Finally, Special Agent Hart stated that

> [o]n May 17, 2007, the investigators retrieved some of defendant Black's trash in which they found, among other things, one empty pharmacy bag bearing the name Lucien Maley and dated May 7, 2007; one prescription receipt for Hydrocodone in Lucien Maley's name, dated May 7, 2007; and one prescription receipt for Testim 1% Gel in the name of Lucien Maley, dated May 7, 2007.

*See id.* at 3.

Given this record, it appears that the Government is in possession of substantial evidence against Defendant. Nonetheless, the Court is confident that there are conditions of release that it can impose that will reasonably assure Defendant's appearance as required.

### 3. Defendant's history and characteristics

With regard to Defendant's history and characteristics, there is evidence that weighs in favor of his release and evidence that weighs in favor of his detention. Weighing in favor of release are his close ties to his immediate family – his wife of almost thirty years and his two college-aged daughters, as well as his mother and his siblings; the fact that he has lived in the Syracuse area for his entire life, with the exception of the six years he spent in the military; and his record concerning his appearance at court proceedings related to his previous felony

conviction.

On the other hand, Defendant is currently unemployed, has few financial resources, other than the equity in his home, has a previous conviction for conspiracy to distribute and possess with intent to distribute marijuana, admits that he "has smoked marijuana regularly since his teenage years[,] [that] . . . he continues to smoke marijuana on a weekly basis [and] likens his use to self-medication to help him cope with the pain from his back and knees," *see* Pretrial Services Report at 2, all of which weigh in favor of his detention. When the Court views this evidence together with the fact that Defendant is currently charged with a conspiracy to distribute and possess with intent to distribute prescription drugs and that the search of his home revealed that he was growing marijuana in his yard, had a book entitled "How to Grow Marijuana" inside his home, possessed a digital scale commonly used by drug traffickers to weigh their drugs prior to distribution, and had a briefcase that contained a large quantity of marijuana and various packaging material consistent with the type that drug traffickers use, the Court concludes that this factor weighs slightly in favor of detention.

### *4. The nature and seriousness of the danger to the community*

Both the Government and Defendant focus primarily on this factor to support their positions relative to Defendant's detention. Defendant argues that,

> given his nature and his characteristics of a non-violent individual who at worst is allegedly involved with marijuana, [the Government has] not establish[ed] by clear and convincing evidence that his background is so serious as to establish him as a danger to the community that would preclude him being released on conditions that would reasonably assure this Court that he will make his future Court appearances and not be involved with

>marijuana.

*See* Defendant's Brief at 2.

Moreover, Defendant notes that,

>[a]lthough in 1998,[3] [he] was convicted for Marijuana Trafficking, in Federal Court, for the Middle District of Pennsylvania, and he served eight months incarceration plus Post-Release Supervision, it is uncontroverted that [he] served his sentence of imprisonment and Post-Release Supervision without any violation and faithfully and responsibly reported to the Court and the Probation Department as requested.

*See id.* at 3.

Defendant also claims that the marijuana that the police found at his home when they executed the search warrant was for his personal use. *See id.* Furthermore, he submits that, "[w]ith the condition in place that [he] go directly to [an inpatient treatment center], . . . concern regarding his marijuana use will be addressed." *See id.* at 3-4. Moreover, Defendant argues that

>a lapse for a person involved in marijuana is not uncommon, but even expected, and it in no way rises to the level of establishing that a person is a danger to the community . . . [and that] the lack of seriousness of this type of alleged marijuana involvement should not serve as a basis to establish a danger to the community.

*See id.* at 4.

Finally, Defendant contends that "there are certain conditions that could be imposed, including drug testing, required treatment, home confinement and/or those conditions proposed by the Probation Department, that would reasonably overcome any presumption and assure the Court that [he] would not be a danger to the community if released." *See id.*

---

[3] Defendant's conviction in the United States District Court for the Middle District of Pennsylvania occurred in 1996 **not** 1998.

On the other hand, the Government argues that

> [t]he PSR . . . confirms that . . . [D]efendant has been using marijuana virtually unabated for decades (his entire adult life) and has engaged in repeated serious criminal conduct during the time he has been married and living with his wife and children.  Thus, releasing . . . [D]efendant back to his home would by no means ensure that he refrains from further drug dealing or other criminal conduct.

*See* Government's Brief at 6.

Based upon these facts as well as Defendant's prior felony conviction and the evidence seized at his home during the execution of the search warrant – including "a book entitled 'How to Grow Marijuana' . . . a digital scale commonly used by drug traffickers to weigh their drugs prior to distributing them . . . [and] a briefcase that contained a large quantity of marijuana and various packaging material consistent with the type used by drug traffickers. . . ." – the Government argues that "the record conclusively establish[es] that . . . [D]efendant has not, and can not [sic], rebut the presumption of detention and other evidence which dictates that he remain detained pending trial."  *See id.*

The Court has no doubt that, unsupervised, it is very likely that Defendant will continue to use, and perhaps to sell, marijuana.  However, the Court is also aware that, when supervised, Defendant has demonstrated that he complies with the conditions of his supervision and does not engage in illegal conduct.  Therefore, the Court is convinced that it can impose a set of conditions that will reasonably assure the safety of the community.

### 5. *All factors considered*

After reviewing *de novo* all of the statutory factors, listening to the parties' oral arguments

and reviewing their submissions, the Court concludes that Defendant has rebutted the presumption that he would flee if released and that he is a danger to the community. Defendant's compliance with the conditions of his supervised release related to his previous felony conviction and the fact that he always appeared when required convinces the Court that Defendant will abide by any conditions that the Court sets for his pretrial release in this case. Moreover, as is its practice, the Court wants to provide Defendant with an opportunity to get the help that he needs to overcome his substance abuse problem. Finally, although it is clear that Defendant is charged with serious offenses and has a long-standing substance abuse problem, the Court finds that the Government has not demonstrated by clear and convincing evidence that there is "no condition or combination of conditions [that] will reasonably assure . . . the safety of . . . the community." 18 U.S.C. § 3142(e). Therefore, the Court reverses Magistrate Judge DiBianco's July 3, 2007 Order of Detention and orders the release of Defendant according to the conditions set forth below.

The Court also advises Defendant that he is subject to the following penalties and sanctions if he fails to abide by the conditions that the Court imposes on his release:

> (1) A violation of any of the conditions of release set forth in this Order may result in the immediate issuance of a warrant for Defendant's arrest, a revocation of release, an order of detention, and a prosecution for contempt of court and could result in a term of imprisonment, a fine or both;
>
> (2) The commission of a Federal offense while on pretrial release will result in an additional sentence of a term of imprisonment of not more than ten years if the offense is a felony or a term of imprisonment of not more than one year if the offense is a misdemeanor. This sentence shall be in addition to any other sentence;
>
> (3) Federal law makes it a crime punishable by up to ten years of imprisonment and a $250,000 fine or both to obstruct a criminal

investigation. It is a crime punishable by up to ten years of imprisonment and a $250,000 fine or both to tamper with a witness, victim or informant or to intimidate or attempt to intimidate a witness, victim, juror, informant or officer of the court. The penalties for tampering, retaliating and intimidation are significantly more serious if they involve a killing or attempted killing;

(4) If after release Defendant knowingly fails to appear as required by the conditions of release or to surrender for the service of sentence, Defendant may be prosecuted for failing to appear or surrender and additional punishment may be imposed. If Defendant is convicted of (a) an offense punishable by death, life imprisonment, or imprisonment for a term of fifteen years or more, Defendant shall be fined not more than $250,000 or imprisoned for not more than ten years or both; (b) an offense punishable by imprisonment for a term of five years or more, but less than fifteen years, Defendant shall be fined not more than $250,000 or imprisoned for not more than five years or both; (c) any other felony, Defendant shall be fined not more than $250,000 or imprisoned for not more than two years or both; (d) a misdemeanor, Defendant shall be fined not more than $100,000 or imprisoned for not more than one year or both;

(5) A term of imprisonment imposed for failure to appear or surrender shall be in addition to the sentence for any other offense. In addition, a failure to appear or surrender may result in the forfeiture of any bond posted.

### IV. CONCLUSION

After carefully reviewing the parties' submissions and their oral arguments and the relevant law, and for the above-stated reasons, the Court hereby

**ORDERS** that Magistrate Judge DiBianco's July 3, 2007 Order of Detention is **REVERSED**; and the Court further

**ORDERS** that Defendant is released with the following conditions:

(1) Defendant shall be released directly to personnel from The Willows in-patient

rehabilitation program, who will provide Defendant with transportation from the facility where he is currently incarcerated to The Willows, **after 10:00 a.m. on September 7, 2007**;

(2) Defendant shall participate in and successfully complete the in-patient program at The Willows. Defendant shall contribute to the cost of services rendered in an amount to be determined by the probation officer based on ability to pay or availability of third-party payments and, following completion of the in-patient program, the defendant shall participate in and successfully complete an out-patient substance abuse treatment program as approved by Pretrial Services or the Court. The defendant shall also contribute to the costs of these services as determined by the probation officer.

(3) Upon the successful completion of the in-patient program and his release from The Willows, Defendant shall report to Pretrial Services within 24 hours of such release, telephone number **315-234-8700**; and as directed thereafter. Defendant shall allow a probation officer to visit at any time at his home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

(4) Defendant shall surrender any passport to **The Clerk of the Court**;

(5) Defendant shall obtain no passport;

(6) Defendant shall restrict his travel to the Northern District of New York unless other travel is approved by Pretrial Services or the Court;

(7) Defendant shall remain at an authorized addressed that is approved by Pretrial Services or the Court;

(8) Defendant shall avoid all contact with co-defendants and defendants in related cases unless such contact is approved by Pretrial Services or the Court;

(9) Defendant shall refrain from possessing a firearm, destructive device or other dangerous weapon;

(10) Defendant shall refrain from any use of alcohol;

(11) Defendant shall refrain from any use or unlawful possession of a narcotic drug and other controlled substances defined in 21 U.S.C. § 802, unless prescribed by a licensed medical practitioner and shall provide access to medical information related to the prescription of such substances;

(12) Defendant shall submit to any method of testing required by the pretrial services office or the supervising officer for determining whether he is using a prohibited substance. Such methods may be used with random frequency and include urine testing, the wearing of a sweat patch, and/or a remote alcohol testing system;

(13) Defendant shall refrain from obstructing or attempting to obstruct or tamper, in any fashion, with the efficiency and accuracy of any prohibited substance testing or electronic monitoring which is (are) required as a condition(s) of release;

(14) Defendant shall report, within 72 hours, to Pretrial Services or the Court any contact with any law enforcement personnel, including, but not limited to, any arrest, questioning, or traffic stop.

**IT IS SO ORDERED.**

Dated: September 6, 2007
       Syracuse, New York

_____
Frederick J. Scullin, Jr.
Senior United States District Court Judge